## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

PAULA J. HOLMES,                         )     CASE NO. 1:20-CV-01317
                                         )
        Plaintiff,                       )
                                         )
        v.                               )     JUDGE DAVID A. RUIZ
                                         )
KILOLO KIJAKAZI,                         )
        *Acting Comm'r of Soc. Sec.*,    )     **MEMORANDUM OPINION AND ORDER**
                                         )
        Defendant.                       )

        Plaintiff, Paula J. Holmes (Plaintiff or Holmes), challenges the final decision of

Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying

her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. (Act).

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the

Commissioner's final decision is affirmed.

### I. Procedural History

        On September 9, 2015, Plaintiff filed her applications for DIB and SSI alleging a disability

onset date of August 5, 2014. (R. 12, Transcript (Tr.) 697-707). The applications were denied

initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative

Law Judge (ALJ). (Tr. 566-568). Plaintiff participated in the hearing on May 17, 2017, was

represented by counsel, and testified. (Tr. 358-419). The ALJ found Plaintiff was not disabled

---

[1]  Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

(Tr. 507-523), but the Appeals Council subsequently remanded the decision for further proceedings. (Tr. 531-532). Plaintiff participated in a supplemental hearing on May 5, 2019, was represented by counsel, and testified. (Tr. 290-348). A vocational expert (VE) also participated and testified. *Id*. The ALJ found Plaintiff not disabled, on May 20, 2019. (Tr. 13-27). On May 5, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 16, 17).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by granting less than controlling weight to the opinions of nurse practitioner Rachel Martin[2]; (2) the ALJ erred by failing to properly evaluate the medical necessity of Plaintiff's cane; and, (3) new and material evidence submitted after the hearing supports a reversal or remand. (R. 16 PageID# 3219, 3226, 3228).

## II. Evidence[3]

### A. Relevant Medical Evidence

#### 1.  Treatment Records

##### a. Mental Impairments

Plaintiff first saw Rachel Martin, CNP, in September of 2014; Plaintiff endorsed a history

---

[2]  While the ALJ and parties acknowledge that Ms. Martin's name changed to McLaughlin during the relevant period in the record (R. 12, PageID# 87; R. 16 PageID# 3215; R 17 PageID# 3236), this decision refers to the provider by the name Martin.
[3]  While the Court has thoroughly reviewed the pertinent medical records and hearing testimony, this recitation of the evidence is intended only to serve as a brief summary of Plaintiff's medical conditions, treatment, and opinions rendered that are directly germane to the assignments of error raised.

of abuse, suicidal ideation, aggression and irritability, but denied current suicidal or homicidal ideation. After a mental status examination, nurse Martin diagnosed bipolar disorder and PTSD and prescribed Seroquel XR. (Tr. 848-52).

Mental health records from late 2014 indicate that a therapist observed Plaintiff to be manic, with tangential, disorganized and rapid speech; and that Plaintiff stopped taking prescribed medications due to self-reported side effects. (Tr. 855, 857, 869, 876-77, 930).

In early 2015, Plaintiff endorsed symptom improvement on Latuda, and reported that she had taken custody of her grandchildren. (Tr. 872; *see also* Tr. 970, 975). Plaintiff remained on Latuda at different levels throughout 2015 with her mental status testing consistently demonstrating orientation, adequate attention and concentration, appropriate mood and affect, increased and loud rate of speech, logical thought process, intact associations, average fund of knowledge, intact memory, and fair insight and judgment with poor coping. (Tr. 880, 883-84, 887, 890-91, 894, 897, 901, 904, 908). At times, Plaintiff had a tearful affect (Tr. 1014, 1092, 1128, 1134), increased anxiety with illness (Tr. 1164) or passive thoughts of suicide that increased when she would briefly stop medication. (Tr. 1002, 1020, 1116, 1170). In addition to caring for her grandchildren, Plaintiff lived with a roommate through July 2015. (Tr. 900, 1062, 1068, 1080, 1092, 1098, 1110). In late 2015, Plaintiff reported that she stopped taking her medication to avoid mixing with alcohol, but agreed to resume the medication. (Tr. 1170, *see also* Tr. 1177).

During 2016, treatment records from nurse Martin continued to describe Plaintiff as: oriented, with adequate attention and concentration, "affect appropriate, depressed, hopeless, friendly, pleasant, mild anxiety," loud, clear and coherent speech with increased rate and normal tone, logical and relevant thought processes with "no SI/HI, rumination about the past, no

obsessions, no psychosis," intact associations, average fund of knowledge, intact memory and judgment and insight: impaired, poor coping, recent non-compliance as coping." (Tr. 1969-1970, *see also* 1977-78, 1985-87, 1993-94, 2001-02, 2009-10, 2198-99, 2205-06, 2212). During this time, Plaintiff continued to endorse complaints of pain (Tr. 1973, 1981, 1989, 2005, 2035, 2194, 2201), mood swings, (Tr. 1973, 1989), irritability (Tr. 1973, 2222), anxiety and depression (Tr. 1973, 1981, 1989, 2005, 2126, 2208), and tangential thoughts and hypomania. (Tr. 1997, 2119). Plaintiff also reported engaging with and supporting friends (Tr. 2013, 2028, 2112, 2201, 2215), having a roommate (Tr. 2084), and being able to keep appointments and go to the store. (Tr. 2005, 2013, 2194, 2208, 2215, 2222). Nurse Martin described Plaintiff as "relatively stable" with "severe exacerbation of depressive symptoms related to psychosocial stressors." (Tr. 1981-82, 1990, 1998, 2006, 2194, 2202, 2208, 2215, 2223).

On January 31, 2017, Plaintiff reported stress, anxiety and feeling overwhelmed to nurse Martin, who observed Plaintiff maintained adequate attention and concentration, depressed mood and affect, normal rate of speed, normal language, logical, linear and relevant thought processes, intact associations with ruminations about the past, intact memory, and fair insight and judgment with a history of mania and poor cooping. (Tr. 2226-2227, 2229). On February 27, 2017, Plaintiff left for Texas to obtain temporary custody of her grandchildren. (Tr. 2321). Plaintiff's grandchildren returned to her care in March 2017, and she reported being anxious and overwhelmed, but able to distract herself with the children. (Tr. 2327, 2581).

On July 12, 2018, Plaintiff required emergency treatment for chest pain and an anxiety attack, where she maintained a normal mood and affect, normal behavior and speech, normal thought content, and requested to be discharged without additional testing. (Tr. 2535, 2537-38). Plaintiff continued to provide emergency custody for her grandchildren in February 2019. (Tr.

3084).

### b. Physical impairments

On October 8, 2014, Plaintiff reported to Kathryn G. Brzozowski, D.O., that she was experiencing numbness and pain, but not taking medication, and the provider noted objective findings included normal gait, symmetrical reflexes, normal muscle strength, tone, reflexes and sensation. (Tr. 1324).

On October 23, 2014, neurologist Payam Soltanzadeh, M.D., observed Plaintiff's normal motor tone, strength, reflexes and range of motion despite Plaintiff's complaints of lower extremity numbness, weakness and pain. (Tr. 1319-1320). Plaintiff could tandem walk, walk on her tip toes, and walk on her heels without an ambulatory device. *Id*. Dr. Soltanzadeh informed Plaintiff that "she might have [degenerative joint disease] … but the nature of her symptoms and her relatively normal exam do not support any significant spine injury at this point." (Tr. 1322). Dr. Soltanzadeh concluded "[s]ome of her neurologic symptoms are non-localizable and most likely conversion disorder due to her underlying anxiety disorder/stress and history of physical abuse," and encouraged Plaintiff to increase her physical activity and follow up with her psychiatrist. *Id*. The next month, Plaintiff was able to walk without an ambulatory device. (Tr. 1315-1316). In December of 2014, Dr. Soltanzadeh again encouraged Plaintiff to follow up with her psychiatrist and psychotherapist to address pain and anxiety, in addition to losing weight to help with numbness. (Tr. 1414).

On February 23, 2015, Jeffrey D. Brown, D.O., examined Plaintiff and diagnosed Plaintiff with morbid obesity with a body mass index of 41.60, back pain, herniated disc and osteoarthritis. (Tr. 1208). A few days later, Plaintiff sought ER treatment for back pain, but maintained normal range of motion upon examination. (Tr. 1309-1310). She had no signs of

neurologic injury, could walk on heels and toes and maintained normal deep tendon reflexes. (Tr. 1311). Low back x-ray studies showed no radiographic evidence of acute pathology and mild lumbar spondylosis, and Plaintiff was discharged with diagnoses of lumbar strain and thoracic myofascial strain. (Tr. 1311, 1448-1449, 1459).

On April 27, 2015, Dr. Soltanzadeh documented Plaintiff's normal muscle tone and 5/5 strength in her extremities, 2+/2+ reflexes, intact sensation, intact coordination, and narrow based gait with the ability to perform tandem walking, walk on tip toes and walk on heels despite complaints of pain and numbness. (Tr. 1301-1302). Dr. Soltanzadeh noted that EMG testing excluded large fiber sensory or sensorimotor polyneuropathy and showed no definite evidence of left lumbosacral radiculopathy. (Tr. 1302). Despite Plaintiff's reports of bilateral leg weakness and use of a walker the following month, Dr. Brown noted 5/5 bilateral extremity strength, intact sensation and no signs of muscular atrophy. (Tr. 1298). That same month, Dr. Soltanzadeh remarked after testing that Plaintiff's episodic lower extremity weakness was "difficult to explain with a neuromuscular reason." (Tr. 1297, 1299-1300).

Treatment notes from September of 2015 note that imaging/x-rays were consistent with mild C4/C5 and C5/C6 degenerative disc disease. (Tr. 1288-89, 1924-25). Plaintiff ambulated with a decreased cadence, and had moderate to major limitations in lumbar range of motion, with minimal to moderate limitations in cervical range of motion. *Id*.

On July 29, 2016, musculoskeletal testing remained normal. (Tr. 2162). Plaintiff reported engaging in more exercise and denied paresthesias or numbness but continued to endorse lower extremity pain. (Tr. 2161-62). Mild degenerative changes in the spine were also visible on an August 12, 2017, chest x-ray (Tr. 2376); and moderate hypertrophic endplate spurring in the thoracic spine was seen in a March 1, 2018, abdominal x-ray. (Tr. 2480).

After reporting a fall in December of 2018, plaintiff was seen on February 4, 2019, by Keith Fuller, M.D. (Tr. 3083). Dr. Fuller observed Plaintiff walking with a limp with no mention of an ambulatory aid. (Tr. 3085).

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On January 15, 2016, nurse practitioner Martin completed a checklist-style Assessment of Ability to Do Work-Related Activities (Mental). (Tr. 1842-43, 1849-50). She marked boxes indicating Plaintiff had a moderate limitation in her ability to relate to other people; a marked limitation in her ability to sustain a routine without special supervision, to perform activities within a schedule, maintain regular attendance and be punctual, to understand, carry out and remember instructions, to respond appropriately to supervision, co-workers and customary work pressures, perform simple tasks and perform daily activities; and extreme limitation in her ability maintain concentration and attention for extended periods, to respond to customary work pressures, respond appropriately to changes in the work setting and use good judgment, perform complex, repetitive, or varied tasks, and behave in an emotionally stable manner. (Tr. 1842, 1849). She listed Plaintiff's diagnoses as bipolar I disorder and post-traumatic stress disorder. (Tr. 1843, 1850). Through a series of check-marked boxes, she also opined the severity of limitations had existed since at least April 5, 2014, with medications having no effect on functioning. *Id*. Nurse Martin indicated Plaintiff's condition was likely to deteriorate under stress; and Plaintiff's impairments would cause her to be absent five or more times per month. *Id*.

On August 4, 2016, Martin Leigh Ann McHenry, LPCC, completed a checklist-style form that also bears the signatures of nurse Martin and Luis F. Ramirez, M.D. (Tr. 2144-45). Therein, it was indicated that Plaintiff had mild limitations with respect to her ability to relate to other people, perform activities within a schedule, maintain regular attendance and be punctual,

respond appropriately to supervision and coworkers, and perform simple tasks. (Tr. 2144-45).
Counselor McHenry opined Plaintiff had moderate limitations with respect to her ability to
understand, carry out and remember instructions, and perform daily activities; and marked
limitations with respect to her ability to respond to customary work pressures, use good
judgment and perform complex, repetitive or varied tasks. *Id*. Lastly, she opined Plaintiff had
extreme limitations with respect to her ability to maintain concentration and attention for
extended periods, sustain a routine without special supervision, respond appropriately to changes
in the work setting, and behave in an emotionally stable manner. *Id*. Counselor McHenry opined
that Plaintiff's condition would deteriorate if she were placed under stress, and she would be
absent for five or more times per month. *Id*.

On February 28, 2017, nurse Martin completed a checkbox-style Off-Task/Absenteeism
Questionnaire opining Plaintiff would be off task at least 20% of the work day due to "labile
mood-laughing/loud, then crying, hx mania, hx severe debilitating depression" in addition to her
inability to concentrate, pay attention and/or focus on a sustained basis due to needing
"redirection frequently, increased rate, volume of speech, often tangential, distracted by
ruminating on past trauma." (Tr. 2154). Plaintiff would also be off task due to chronic diffuse
pain and drowsiness and/or need to lie down and rest or sleep during episodes of depression in
which she will stay in bed days at a time and due to being "very distracting to others, poor stress
management, poor coping, frequent episodes of panic[,]" and that she would be absent about four
times per month. *Id*.

On August 30, 2018, nurse Martin completed a Medical Statement Concerning Trauma and
Stressor-Related Disorders using check-marks to opine that Plaintiff's bipolar I disorder, mixed
and PTSD disorder resulted in marked limitations in her ability to understand, remember or

apply information and interact with others, and extreme limitations in her ability to concentrate, persist, or maintain tasks and adapt or mange herself with marginal adjustment. (Tr. 2903). She also indicated Plaintiff had medical documentation of a depressive disorder and bipolar disorder resulting in a marked limitation in her ability to understand, remember, or apply information, moderate limitation in her ability to interact with others, and extreme limitations in her ability to concentrate, persist or maintain pace at tasks and adapt or manage herself with a minimal capacity to adapt to changes in her environment or demands that are not already part of her daily life. (Tr. 2906).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental

ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not

performing substantial gainful activity, has a severe impairment (or combination of impairments)

that is expected to last for at least twelve months, and the impairment(s) meets a listed

impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act
   through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 5, 2014,
   the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.).*

3. The claimant has the following severe impairments: degenerative disc disease of
   the cervical spine, peripheral neuropathy, osteoarthritis of the bilateral hips,
   obesity, chronic obstructive pulmonary disease (COPD), acquired
   hypothyroidism, depression, anxiety, and post-traumatic stress disorder (PTSD)
   (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that
   meets or medically equals the severity of one of the listed impairments in 20 CFR
   Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
   416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the
   residual functional capacity to perform light work as defined in 20 CFR
   404.1567(b) and 416.967(b) except occasional foot controls; occasional climbing
   of ramps and stairs; no climbing of ropes, ladders and scaffolds; occasional kneel,

crouch and crawl; frequent hand controls, reaching, handling and fingering; no exposure to hazards such as unprotected heights, moving mechanical parts or operating a motor vehicle; frequent exposure to atmospheric conditions such as dust, odors, fumes and pulmonary irritants; simple tasks and simple work-related decisions in a routine work setting with changes that are easily explained; interacting with supervisors, coworkers and the public if the work is goal oriented, but not at a fast-paced or production rate pace, and the worker functions in relating to people are limited to taking instructions-helping as these are defined in Appendix B of the Dictionary of Occupational Titles.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on *** 1967 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age on January 5, 2017 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 5, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(Tr. 16, 17, 19-, 25-26).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

**1. Weight Ascribed to Nurse Martin's Opinions**

Plaintiff's first assignment of error contends the ALJ erred when granting less than controlling weight to the opinions of her "treating source," nurse Martin. (R. 16 PageID# 3219). Plaintiff's contention that a nurse practitioner's opinion is entitled to controlling weight is not consistent with the regulations in effect at the time Plaintiff filed her application. As the Commissioner correctly points out, nurse Martin was not an acceptable medical source under the applicable regulations governing Plaintiff's applications, and cannot be afforded controlling weight. (R. 17. PageID# 3243-44).

As an initial matter, Plaintiff filed her applications for DIB and SSI on September 9, 2015. (Tr. 697-707). A nurse practitioner is not considered an "acceptable medical source" with respect to claims filed *before* March 27, 2017. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7) ("Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (**only with respect to claims filed (see § 416.325) on or *after* March 27, 2017"**)(emphasis added)).

Although nurse practitioners are not "acceptable medical sources" under the regulations for the purposes of the case at bar, Social Security Ruling (SSR) 06-03p, states that:

> Medical sources who are not "acceptable medical sources," such as nurse practitioners … cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.… the adjudicator generally should *explain the weight* given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning,

SSR 06-03p, 2006 WL 2329939 at * 2-6 (Aug. 9, 2006)(italics added); *see also Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) ("[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations.") (*citing Drain v. Comm'r of Soc. Sec.*, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) and *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).[4]

---

[4] The Commissioner asserts that SSR 06-3p was "rescinded effective March 27, 2017, for *pending* claims." (R. 17, PageID# 3244). The Commissioner is correct that SSR 06-3p—along with two other SSRs—was rescinded as of March 27, 2017 for being "inconsistent or unnecessarily duplicative with our recent final rules." *Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p*, 82 FR 15263-01 (March 27, 2017). It bears noting that the only

To the extent Plaintiff argues that nurse Martin's opinions were "treating source" opinions entitled to "controlling weight," such arguments lack merit. "Treating source" is a term of art in the social security context, and a medical professional does not become a "treating source" by virtue of the mere fact that an individual was seen by said source in his or her professional capacity. Rather, "A treating source is a physician, psychologist, or other acceptable medical source who has provided the claimant with medical treatment or evaluation and has had an ongoing relationship with the claimant." *Porter v. Comm'r of Soc. Sec.*, 634 Fed. Appx. 585, 586 (6th Cir. 2016) (citing 20 C.F.R. § 416.902) (noting that an individual did "not qualify as a treating source because she [was] not a physician, psychologist, or other acceptable medical"). Nurse practitioners such as nurse Martin constituted "other medical sources" rather than "acceptable medical sources" under the regulations in effect—a "distinction [that] has several implications in the evaluation of the opinions expressed by these sources." *Johnson v. Comm'r of Soc. Sec.*, No. 1:17 CV 847, 2018 WL 3632226, at *4-5 (N.D. Ohio July 31, 2018) (Baughman, M.J.):

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, **only "acceptable medical sources" can be considered treating sources**, as defined in 20 CFR 404.1502 and 416.902, **whose medical opinions may be entitled to controlling**

---

inconsistencies identified in the recission with respect to SSR 06-3p applied to claims filed on or after March 27, 2017. *Id*. The claims filed herein predate March 27, 2017. At least one district court has found that "[b]ecause plaintiff's claim was filed before the effective date of the rescission, SSR 06-3p applies here." *Riopelle v. Comm'r of Soc. Sec.*, No. 1:18-CV-009, 2019 WL 336902, at *9 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted*, 2019 WL 978332 (S.D. Ohio Feb. 28, 2019). Nevertheless, the Commissioner asserts that the ALJ's decision actually complied with SSR 06-3p. (R. 17, PageID# 3244). As explained in the body of this opinion, the Court agrees.

**weight**. See 20 CFR 404.1527(d) and 416.927(d).

Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.

*Id*. (quoting SSR 06-3p) (emphasis added).

Consequently, nurse Martin cannot be considered a "treating source" as she is not an "acceptable medical source," given the clear text of the regulations; and, she is properly classified as an "other source." *McNamara v. Comm'r of*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (*per curiam*) (citing 20 C.F.R. § 416.913(d)(1)); SSR 06-3p, 2006 WL 2329939, at *2; *see also Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015). It follows that her opinions are not entitled to controlling weight. Furthermore, the ALJ was not required to give "good reasons" for rejecting the opinions of a non-acceptable medical source. *See, e.g., Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 U.S. Dist. LEXIS 104855, at *36 (N.D. Ohio June 4, 2018) (finding that where the ALJ generally explained the reasons for ascribing less weight to the opinion of an "other source," "[t]o require greater articulation or to require that the ALJ give 'good reasons' for rejecting the opinion of another source would impermissibly extend the scope of the treating physician rule.")

The ALJ adequately explained his reasons for not crediting nurse Martin's multiple checklist-style opinions in a lengthy discussion below:

Little weight is given to the medical source statement completed by Rachael Martin, CNP, dated January 15, 2016. As noted above, this is the medical source statement that was the subject of the remand even though it was discussed in the prior vacated decision dated October 4, 2017 (See Exhibit B10A, pp. 16-17). As was the case in the prior vacated decision, little weight is given to such statement as Nurse Martin found that the claimant has marked or extreme limitations in most work-related mental activities but the overall evidence in the record including the claimant's counseling records from Signature Health establish that

the claimant is not that limited (Exhibits B11F, B12F). The evidence also includes a medical source statement that was completed by Nurse Martin along with Leigh Ann McHenry, LPCC and Luis F. Ramirez, M.D. dated August 4, 2016. M.D. (Exhibit B19F).[5]  In this statement, the aforementioned individuals opined that the claimant had bipolar disorder resulting in the following: mild limitation in the claimant's ability to relate to other people, perform activities within a schedule, maintain regular attendance, be punctual, respond appropriately to supervisors and co-workers, and perform simple tasks: moderate limitation in her capacity to understand, carry out, and remember instructions, and perform activities of daily living: marked limitations in responding to customary work pressures, using good judgment, and performing complex, repetitive, or varied tasks: and, extreme limitations in maintaining concentration and attention for extended periods, sustaining a routine without special supervision, responding appropriately to changes in the work setting, and behaving in an emotionally stable manner. It was further suggested that the claimant's condition would likely deteriorate if placed under even routine work stresses, and would otherwise be absent from work more than five times per month. Little weight is given to this statement because it is not consistent with the overall evidence in the record, and instead, appears to be based on the claimant's subjective reports (Exhibit B19F, pp. 2-3). In addition, I have considered the off task/absenteeism questionnaire authored by Nurse Martin on February 28, 2017. In this statement, she found that the claimant's labile mood and alternating episodes of depression would cause her to be off-task at least 20 percent of the typical workday and absent four times a month. However, little weight is also given to this statement because it is not supported by the overall evidence in the record and appears to be based on the claimant's subjective reports rather than independent assessment by Nurse Martin supported by objective findings. (Exhibit B20F).

Little weight is given to the medical source statement concerning trauma and stressor -related disorders completed by Rachael McLaughlin, APN, dated August 30, 2018. It should be noted that Rachael McLaughlin is Rachael Martin's new name. In this statement, she indicated that the claimant has marked limitations in understanding, remembering or applying information and in interacting with others and extreme limitations in concentrating, persisting or maintaining pace and in adapting or managing oneself. However, she does not set forth any explanation for her findings and the overall evidence in the record establishes that the claimant is not that limited (Exhibit B39F). Little weight is further given to

---

[5]  Plaintiff's brief makes no citation to the record that would suggest Dr. Ramirez independently treated her. Even if the Court were to presume that Dr. Ramirez actually saw Plaintiff on one occasion, this Court has previously observed that "[t]he Sixth Circuit has found that the treating physician relationship cannot arise from a single visit." *McCauley v. Comm'r of Soc. Sec.*, No. 1:17CV1675, 2018 U.S. Dist. LEXIS 158133, at *15-16 (N.D. Ohio July 5, 2018) (*citing Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Thus, the addition of Dr. Ramirez's signature does not alter the standard under which the opinion is reviewed.

the medical source statement concerning depression, bipolar and related disorders that Nurse McLaughlin also completed on August 30, 2018 because it is not supported by the overall evidence in the record. Additionally, this statement is internally inconsistent with statement concerning trauma and stressor - related disorders that she completed on the same day because in this statement, she indicated that the claimant has only a moderate limitation in interacting with others but stated that the claimant has a marked limitation in the other statement. Nurse McLaughlin also did not set forth any explanation to her findings in this statement and it appears that she based her findings on the claimant's subjective reports (Exhibit B40F). Similarly, little weight is given to the off task/absenteeism questionnaire that Nurse McLaughlin also completed on August 30, 2018. She indicated that the claimant would be off-task at least 20 percent of the typical workday and absent four times a month but this is not supported by the overall evidence in the record and appears to be based on the claimant's subjective reports (Exhibit B41F).

(Tr. 23-24).

Although the ALJ's explanation is repetitive, it is, nevertheless, sufficient under aforementioned rulings and regulations. The ALJ adequately considered those factors deemed relevant, such as consistency, supportability, internal inconsistencies within the statement, and that nurse Martin's check-box style opinions did not provide "any explanation to her findings in this statement and it appears she based her findings on the claimant's subjective reports." (Tr. 24).

Plaintiff, however, suggests that the ALJ cherry-picked the evidence. (R. 16, PageID# 3225). Such arguments are unavailing and rarely successful. The Sixth Circuit has found that allegations of cherry-picking of the evidence by the ALJ are "seldom[ly] successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017),

17

*report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017). Moreover, it is the responsibility of the ALJ to resolve the conflicts in the record where there are conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"). "It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106, 2014 U.S. Dist. LEXIS 33135, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) *citing Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Plaintiff's other argument—that the limitations assessed by nurse Martin arguably correlate to the diagnoses and symptoms noted in the record—is tantamount to an invitation for this court to reweigh the evidence and to specifically assign greater weight to CNP Martin's opinion. (R. 16 PageID# 3226). This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), r*eport and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

The court finds no deficiency with the level of explanation the ALJ provided regarding nurse Martin's opinions. Therefore, the first assignment of error is without merit.

**2. Medical Necessity of Plaintiff's Cane.**

In the second assignment of error, Plaintiff contends that the ALJ erred by failing to

properly evaluate Plaintiff's use of a cane to assist with her ambulation and balance, further asserting that "[t]he evidentiary record shows that this ambulatory device was medically necessary .. [due to] a long history of ambulation difficulties and balance issues." (R. 16 PageID# 3227). The Commissioner responds by arguing that applicable social security rulings and caselaw suggest that the use of a hand-held assistive devise will only be found necessary when established by medical documentation. (R. 17 PageID# 3246).

When considering Plaintiff's argument pertaining to the use of a hand-held assistive device such as a cane or walker, the Court's analysis is guided by Social Security Ruling (SSR) 96-9p, 1996 WL 374185 (Jul. 2, 1996), which provides as follows:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

*Id*. (emphasis added).

The court finds no reversible error with respect to the ALJ's decision to omit the need for a hand-held assistive device from the residual functional capacity (RFC) assessment. While Plaintiff is correct that the ALJ does not specifically reference SSR 96-9p or provide a direct rationale as to why the cane is not necessary, the ALJ did note Plaintiff's use of such devices (or lack thereof), her complaints of pain and weakness and her antalgic or limping gait. *See, e.g*., Tr. 20; R. 12, PageID# 83 ("The claimant's gait was also independent without ambulatory device in November 2014 (Exhibit B6F, p.32)." "The claimant again displayed no acute physical

19

abnormalities in March or April 2015, but presented with apparent use of a walker in May due to alleged weakness of the bilateral legs (Exhibit B6F, pp. 14-24)).”

Moreover, SSR 96-9p contains two requirements before an ALJ may conclude that a hand-held assistive device is “medically required.” First, there must be medical documentation establishing the need for said device to aid in walking/standing; *and* second, the medical documentation must also “describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)” 1996 WL 374185 at *7.

Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, finding it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Blackburn v. Colvin*, No. 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Mitchell v. Comm'r of Soc. Sec*., No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as “medical documentation establishing the need” for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue, No*. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) (“Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.”); *Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012) (finding the record supported the ALJ's finding that a cane or crutch was not a “medical necessity” where the record contained only the claimant's self-reports of cane use and physicians’ observations that claimant

used a cane); *Robinson v. Comm'r of Soc. Sec.*, No. 5:14-cv-291, 2015 WL 1119751 at *15 (N.D. Ohio Mar. 11, 2015) (finding that a physician's mere observation that claimant used a cane was insufficient to establish the cane was a medical necessity because physician's "treatment notes do not reflect a prescription for a cane") (McHargh, M.J.).

Plaintiff fails to identify evidence satisfying the criteria under SSR 96-9p. Rather, Plaintiff cites an invoice for a cane apparently following an order placed by a provider. (R. 16, PageID# 3227, *citing* Tr. 2330-2331). Assuming arguendo that the cited medical record is sufficient to establish the first part of the SSR 96-9p test, Plaintiff fails to draw this Court's attention to any medical documentation describing the circumstances for which a cane is needed as required by SSR 96-9p. *See, e.g., Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) ("Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (Limbert, M.J.) (*citing Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)). As set forth above, the record includes the single incidence of a walker and reference to a cane apparently prescribed by an unspecified provider, but they are not observed in other treatment records and Plaintiff cites to no records demonstrating the circumstances for which an assistive device is needed, which as indicated in SSR 96-9p could include "whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." The Plaintiff's citations are insufficient to establish that the cane was medically required, the expected duration of its medical necessity, and that the ALJ erred by not including an assistive device in the RFC.

Therefore, Plaintiff's argument that the ALJ erred by omitting the need for a such a device from the RFC is not well taken.

### 3. New and Material Evidence

In the final assignment of error, Plaintiff contends new and material evidence supports reversal or remand. (R. 16 PageID# 3228-29). Plaintiff indicates that subsequent to her hearing, Plaintiff submitted additional medical evidence to the Appeals Council. (R. 16. PageID# 3216). The Commissioner responded that the evidence is not new and material. (R. 17 PageID# 3248).

A reviewing court may remand in this context only if the party seeking such remand shows that (1) the additional evidence is new and material, and (2) that she had good cause for her failure to incorporate it into the record during the administrative proceeding. *Oliver v. Secretary, HHS*, 804 F.2d 964, 966 (6th Cir. 1986), 42 U.S.C. § 405(g) ("The court…may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). The party seeking remand bears the burden of showing that a remand is proper under Section 405. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver*, 804 F.2d at 966.

Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (*quoting Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990)). In addition, "[e]vidence is material when it concerns the claimant's condition prior to the ALJ's decision and there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented." *Langford v. Astrue*, No. 1:09CV1629, 2010 WL 3069571, at *5 (N.D. Ohio Aug. 3, 2010) (*citing* cases); *see also Foster*, 279 F.3d at 357 (*quoting Sizemore*, 865 F.2d at 711); *Hamilton*, 2010 WL 1032646, at *5. Plaintiff must demonstrate that there is a reasonable probability that the Commissioner would have reached a

different disposition of her claim if presented with new evidence. *Foster*, 279 F.3d at 357 (*citing*

*Sizemore*, 865 F.2d at 711); *Hamilton*, 2010 WL 1032646, at *5.

Plaintiff's alleged new evidence is not sufficient to remand this case for further

proceedings. Plaintiff cites to a Signature Health psychiatric treatment record dated March 13,

2019, in which Plaintiff appeared tangential with speech volume elevated, worrying about her

grandchildren, feeling helpless, not sleeping well, feeling anxious and overwhelmed, having

chest pain from severe anxiety, low energy, ruminating, and endorsed suicidal ideation. (Tr.

206). Nurse Martin described Plaintiff as having intact memory, and stated that Plaintiff "is a

moderate risk due to comorbidity and severity of symptoms. She wants to continue her current

regimen, continue to monitor closely due to constant stressors, which may exacerbate

symptoms." (Tr. 204, 206).

Plaintiff also submitted counseling records from LISW Baker dated March 12, 2019

through May 10, 2019, focusing on Plaintiff's reports of family and financial stress. (*See*, *e.g.*,

43-44, 50, 56, 62, 68. 74). On March 26, 2019, Plaintiff spoke loudly and boisterously, and

reported feeling "all over the place today", "that her sleep cycle was off", and she was saddened

by issues impacting her family and a friend. (Tr. 50). Ms. Baker observed Plaintiff appeared

overwhelmed and emotionally labile, with good eye contact, and no progress change. (Tr. 46).

On May 10, 2019, the last appointment before the ALJ's decision, but after the May 3, 2019

hearing, Plaintiff reported she had just started to feel better after a COPD exacerbation, and she

was feeling stress due to the ongoing situation with her grandchildren. (Tr. 74). LISW Baker

described Plaintiff as having good hygiene, a cooperative behavior, good eye contact, normal

speech and an appropriate mood and affect. (Tr. 70).[6]

The ALJ's analysis of LISW Baker's opinion considered symptoms of being easily distracted, tangential speech, loud and fast speech, and concluded "[w]hile the claimant has had such symptoms at times, the evidence indicates that she has adequate attention and concentration on other occasions." (Tr. 24). In weighing Nurse Martin's opinions that Plaintiff would be off task due to labile mood and alternating periods of depression, the ALJ concluded "it is not supported by the overall evidence in the record and appears to be based on the claimant's subjective reports rather than independent assessment by Nurse Martin supported by objective findings." (Tr. 24). "Evidence is not material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition after the administrative hearing." *Kinsley v. Berryhill*, 2018 WL 3121621, 2018 U.S. Dist. LEXIS 45611, at *47 (N.D. Ohio Jan. 24, 2018). Further, as the ALJ specifically considered symptoms presented in these records, Plaintiff cannot show that there is a reasonable probability that the additional evidence would compel a different conclusion.

Moreover, Plaintiff has not shown good cause for her failure to incorporate the March and April 2019 evidence into the record during the May 3, 2019 administrative proceeding. *See Oliver*, 804 F. 2d at 966. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of HHS*, 727 F.2d 551, 554 (1984) (*per curiam*)). Plaintiff argues that the evidence "is new as it was clearly not in existence at the time

---

[6] Plaintiff also submitted psychiatric treatment, counseling and physical medicine records for the period from May 30, 2019, through November 15, 2020. (Tr. 75-200, 207-236, 238-288). The records dated after the ALJ's decision are not relevant to the period at issue.

of the hearing" and therefore could not have been submitted. (R. 16 PageID# 3230). While this is true with respect to the May 10, 2019 treatment record, Plaintiff had already had the appointments with Nurse Martin and LISW Baker through April 30, 2019.

A review of the May 3, 2019 transcript reveals the ALJ asked Plaintiff's counsel if he was aware of any outstanding additional evidence, and counsel responded, "I am not. I know she had an appointment with a new doctor earlier this week, got a few new prescriptions, but nothing that's going to make or break the case. So I think we've got enough here." (Tr. 293). The transcript of the hearing indicates that neither claimant nor counsel requested that the record remain open until other evidence could be made a part of the record, "which suggests that Plaintiff considered the evidence before the ALJ complete and sufficient to support her claim." *Dunlap v. Astrue*, No. 3:10-CV-2364, 2011 WL 5037231, at *11 (N.D. Ohio Oct. 24, 2011). Remand for further consideration is not warranted.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: September 12, 2022